**Joseph G. Sansone**
**Chief, Market Abuse Unit**
**Tracy Sivitz**
**Chevon Walker**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**100 Pearl Street, Suite 20-100**
**New York, New York 10004-2616**
**(212) 336-0029 (Sivitz)**
**sivitzt@sec.gov**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | <u>COMPLAINT</u> |
| Plaintiff, | 1:24-cv-6831 |
| -against- | |
| PHILIP MARKIN, | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

Defendant Philip Markin ("Philip Markin" or "Defendant") alleges as follows:

**SUMMARY**

1.      This case involves insider trading by Defendant Philip Markin in the securities of

Pandion Therapeutics, Inc. ("Pandion") in advance of the February 25, 2021 announcement of a

tender offer by Merck & Co., Inc. ("Merck") to acquire Pandion (the "Announcement").

2.      On July 25, 2022, in this District, the Commission filed a Complaint against Philip

Markin's cousin, Seth Markin, and Brandon Wong, a friend of both Seth and Philip Markin (the

"July 2022 Complaint").[1]

---

[1]      *SEC v. Markin, et al.*, 1:22-cv-06276-JHR (S.D.N.Y. July 25, 2022).

3.      On September 20, 2023, in this District, the Commission filed a separate but related Complaint against Philip Markin's former friend and roommate, Jonathan Becker ("Becker") (the "Becker Complaint".) [2]

4.      As alleged in the July 2022 Complaint, during the approximately three-and-a-half weeks leading up to the Announcement, Seth Markin misappropriated material nonpublic information about Merck's planned tender offer for Pandion (the "Merck-Pandion Deal") from his romantic partner, an associate at a major law firm (the "Law Firm") that represented Merck in the Merck-Pandion Deal (the "Associate"). While the Associate worked on the Merck-Pandion Deal, Seth Markin often stayed for multiple days at a time at the Associate's apartment. The Associate worked on the deal and engaged in frequent telephone calls regarding the deal from her apartment. In breach of his duty of trust and confidence to the Associate, Seth Markin used the information he obtained while staying in the Associate's apartment to purchase Pandion stock ahead of the Announcement and to tip his close friend Brandon Wong, who also purchased Pandion stock ahead of the Announcement.

5.      As alleged in the July 2022 Complaint, Seth Markin also tipped other individuals about the Merck-Pandion Deal. One of these individuals was Seth Markin's cousin, Defendant Philip Markin, who illegally used the information to purchase Pandion stock ahead of the Announcement.

6.      Philip Markin, who is also referred to as "Markin's Relative" in the Becker Complaint, in turn, unlawfully disclosed the material nonpublic information he received from Seth Markin to his then friend and roommate, Becker, who also purchased Pandion stock ahead of the Announcement.

---

[2]      *SEC v. Jonathan Becker*, 23-cv-08331-JHR (S.D.N.Y September 20, 2023).

7.     When Pandion's stock price increased by over 133% on the day of the Announcement, Philip Markin reaped ill-gotten gains of $16,362 and Becker reaped approximately $266,000.

## VIOLATIONS

8.     By virtue of the foregoing conduct and as alleged further herein, Defendant has violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and Exchange Act Section 14(e) [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3].

9.     Unless Defendant is restrained and enjoined, Defendant will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

10.     The Commission brings this action pursuant to the authority conferred upon it by Exchange Act Sections 21(d) [15 U.S.C. § 78u(d)] and 21A(a) [15 U.S.C. § 78u-1(a)].

11.     The Commission seeks a final judgment: (a) permanently enjoining Defendant from violating the federal securities laws and rules this Complaint alleges he has violated; (b) ordering Defendant to pay civil money penalties pursuant to Exchange Act Section 21A(a) [15 U.S.C. § 78u-1(a)]; and (c) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to Exchange Act Section 27 [15 U.S.C. § 78aa].

13.     Defendant, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails or of the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged herein.

3

14.     Venue lies in this District under Exchange Act Section 27 [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District. At all relevant times, common stock of Pandion traded publicly on The Nasdaq Global Select Market, which is headquartered in New York, New York.

## DEFENDANT

15.     **Philip Markin**, age 33, is a resident of Weehawken, New Jersey and employed as an elevator mechanic.

## RELEVANT INDIVIDUALS AND ENTITIES

16.     **Seth Markin**, age 32, is a resident of Washington Crossing, Pennsylvania, and Philip Markin's cousin. Seth Markin was formerly in new agent training for the Federal Bureau of Investigation. At the time of the insider trading alleged in this complaint, Seth Markin was employed by a federal contractor as a compliance analyst.

17.     **Brandon Wong**, age 40, is a resident of New York, New York, and Seth Markin's close friend. At the time of the insider trading alleged in this complaint, Brandon Wong was employed by a tutoring company in a technical support role.

18.     **Becker**, age 34, is a resident of Weehawken, New Jersey and was Philip Markin's friend and roommate at the time of the insider trading alleged in this complaint. Becker is employed as an elevator mechanic.

19.     **Pandion** at all relevant times was a Delaware corporation with headquarters in Cambridge, Massachusetts. Pandion was a clinical-stage biopharmaceutical company that developed therapeutics for patients with autoimmune diseases. Prior to the completion of Merck's acquisition of Pandion in April 2021, Pandion's common stock was listed on The Nasdaq Global Select Market under the symbol PAND.

4

20.    **Merck** is a New Jersey corporation with headquarters in Rahway, New Jersey (formerly headquartered in Kenilworth, New Jersey), and with common stock listed on the New York Stock Exchange.  It is a global health care company with products that include prescription medicines, vaccines, biologic therapies, and animal health products.

## FACTS

## I.    MERCK TOOK SUBSTANTIAL STEPS TO ACQUIRE PANDION BY TENDER OFFER

21.    As alleged in the July 2022 Complaint, beginning in August of 2020, representatives of Merck and Pandion began meeting to discuss updates to Pandion's drug developments and to facilitate due diligence by Merck of Pandion pursuant to the parties' confidentiality agreement.  In September 2020, executives at both companies met to discuss working together on advancing Pandion's products, culminating in an unaccepted proposal by Merck in October 2020 for a possible partnership agreement between the companies.

22.    From November 2020 through January 2021, Merck continued its due diligence of Pandion, including accessing Pandion's virtual data room containing regulatory submissions and related information.  By at least January 25, 2021, Merck had retained the Law Firm as counsel to represent Merck in developing and implementing its plan to acquire Pandion.

23.    On or about February 5, 2021, Merck engaged an investment bank to provide investment banking services in anticipation of a potential deal with Pandion.

24.    On or about February 7, 2021, Merck submitted a proposal to Pandion to acquire all of its common stock.

25.    On or about February 9, 2021, Merck and Pandion reached agreement on a proposed acquisition price for Pandion's common stock of $60 per share.

26.     Also, on or about February 9, 2021, Merck provided Pandion with an initial draft of a merger agreement, under which Merck would acquire Pandion's shares of common stock by tender offer.

## II.     SETH MARKIN MISAPPROPRIATED MATERIAL NONPUBLIC INFORMATION FROM THE ASSOCIATE

27.     As alleged in the July 2022 Complaint, beginning in or about October 2020 and through approximately May 2021 except for a few days in January 2021, Seth Markin was in a close romantic relationship with the Associate.  Throughout their relationship, Seth Markin often stayed at the Associate's apartment for extended periods of time.

28.     Because of the global pandemic, Seth Markin and the Associate frequently worked from the Associate's apartment during their relationship.

29.     During their relationship, Seth Markin and the Associate shared confidences, including discussions about each other's families and plans of marriage.

30.     As part of his relationship with the Associate, Seth Markin agreed, expressly or by implication, to treat information related to the Associate's work as confidential and not to trade on it, use it for personal benefit, or share it with others.

31.     On or about January 31, 2021, the Associate joined the Law Firm's team of attorneys representing Merck on the Merck-Pandion Deal and became aware of Merck's efforts to acquire Pandion.  The Associate continued working on the Merck-Pandion Deal through and beyond the date of the Announcement.

32.     The Associate frequently worked on the Merck-Pandion Deal from her apartment, where Markin was often staying, and she kept a binder of documents concerning the Merck-Pandion Deal in the apartment.

33.     Among the documents included in the binder was a printed copy of an internal Law Firm email, dated January 31, 2021, which indicated that Merck was considering the acquisition of

6

Pandion and sought to move quickly. Additionally, the email disclosed a code name for the deal and stressed that the deal was "highly confidential" and that those working on the deal must be "extremely careful" not to disclose information associated with the deal.

34.     Starting on or before February 1, 2021, and continuing in the days leading up to the Announcement, Seth Markin misappropriated material nonpublic information about the Merck-Pandion Deal from the Associate, including that Merck planned to acquire Pandion, the target date when the acquisition would be publicly announced, and an estimated share price for the acquisition.

35.     While working from home in January and February 2021, the Associate conducted work-related telephone calls, including on the Merck-Pandion Deal, from the Associate's one-bedroom apartment. At times, Seth Markin was present in the Associate's apartment when the Associate conducted such work-related calls.

36.     Additionally, on multiple occasions in or about January and February 2021, without the Associate's consent and while she could not observe him, Seth Markin reviewed the Associate's binder of documents concerning the Merck-Pandion Deal.

37.     As alleged in the July 2022 Complaint, between February 1, 2021, the day after the Associate was assigned to work on the Merck-Pandion Deal, and February 23, 2021, two days before the Announcement, Seth Markin purchased 2,270 shares of Pandion stock.

38.     Further, as alleged in the July 2022 Complaint, in or about February 2021, Seth Markin tipped Brandon Wong the material nonpublic information about the Merck-Pandion Deal that Seth Markin had misappropriated from the Associate. The information he communicated to Wong included details about the nature of the transaction, the target date of the Announcement, and the expected transaction price.

39.     Between February 10, 2021 and February 24, 2021, Brandon Wong purchased 35,382 shares of Pandion stock.

III.    **SETH MARKIN TIPPED PHILIP MARKIN WHO BOUGHT PANDION STOCK AHEAD OF THE ANNOUNCEMENT AND TIPPED BECKER**

40.    In or about February 2021, Seth Markin tipped his cousin, Defendant Philip Markin, material nonpublic information about the Merck-Pandion Deal that Seth Markin had misappropriated from the Associate.

41.    One of the ways Seth Markin and Philip Markin communicated about the Merck-Pandion deal was via an encrypted messaging application that contained a "disappearing message" feature, which would automatically delete message content after a certain period.  On or about Sunday, February 14, 2021, Seth Markin and Philip Markin communicated about Pandion using the encrypted messaging application.  Seth Markin and Philip Markin also spoke by phone, including on February 14, 2021.

42.    That same day, February 14, 2021, Seth Markin remarked in a message to Brandon Wong that he told Philip Markin about Pandion.  In an encrypted message, Seth Markin told Brandon Wong, "Got Phil into 🐼," to which Brandon Wong responded, "Ok now I don't feel bad about keeping things from him and can talk to him about 🐼 later today."  Throughout February 2021, Seth Markin and Brandon Wong often referred to Pandion as "Panda" or by using a 🐼 emoji in their communications.

43.    Minutes after his call with Seth Markin on February 14, 2021, Philip Markin called his then friend and roommate, Becker.  Throughout February 2021, in the days leading up to the Announcement, Philip Markin unlawfully communicated to Becker material nonpublic information that Seth Markin had communicated to him about Pandion.

44.    On or about Tuesday, February 16, 2021, using a messaging application, Philip Markin and Becker discussed "insider info" from Seth Markin that involved a "huge announcement" and a stock price that would "triple" to "$60."  In response to Becker's question about whether

Brandon Wong and Seth Markin were "fully invested," Philip Markin told Becker that "Brandon went full on Thursday."

45.    On or about February 16, 2021, Philip Markin bought 120 shares of Pandion stock based upon the tip he received from Seth Markin.

46.    On or about Wednesday, February 17, 2021, using a messaging application, Philip Markin unlawfully continued to communicate to Becker updated material nonpublic information about Pandion that he received from Seth Markin, including that the date of the Announcement had moved, and that the "news won't be released till next week."  During the same conversation via the messaging application, Becker asked Philip Markin to confirm that Seth Markin had told Philip Markin that he "has inside info" and that the price is "going to triple."  In response, Philip Markin told Becker that Seth Markin and Brandon Wong were confident in the information.

47.    Philip Markin purchased more Pandion stock on February 17 and 24, 2021, establishing a total position of 445 shares based on material nonpublic information conveyed to him by Seth Markin.  All of Philip Markin's purchases of Pandion stock were made after Merck took substantial steps to acquire Pandion by tender offer.

48.    Between February 16, 2021 and February 23, 2021, Becker purchased 7,400 shares of Pandion stock based on material nonpublic information Seth Markin had conveyed to Philip Markin and Philip Markin had then communicated to Becker.

49.    Philip Markin knew, was reckless in not knowing, or consciously avoided knowing that the information he received from Seth Markin was material and nonpublic.

50.    Philip Markin also knew, was reckless in not knowing, or consciously avoided knowing that Seth Markin provided him with material nonpublic information about the Merck-Pandion Deal that was conveyed in breach of a duty of trust and confidence and for personal benefit.

9

51.     Philip Markin also knew or had reason to know that the material nonpublic information about the Merck-Pandion Deal had been acquired directly or indirectly from an insider to the Merck-Pandion Deal negotiations – that is, from an employee or an agent of the target company, or the acquiring company, or an advisor to one of those companies in connection with the transaction.

52.     Philip Markin unlawfully communicated to Becker material nonpublic information that he received from Seth Markin.

53.     Philip Markin conveyed material nonpublic information to Becker with the intent that Becker would trade on it and under circumstances in which it was reasonably foreseeable that Becker would trade on it.

## IV.     THE ANNOUNCEMENT AND DEFENDANT'S ILL-GOTTEN GAINS

54.     On February 25, 2021, before market open, Merck and Pandion announced that the companies had entered into a definitive agreement under which Merck would acquire Pandion. Under the agreement, Merck would initiate a tender offer to acquire all outstanding shares of Pandion for $60 per share.  Pandion's stock price closed at $59.81 per share that day, an increase of $34.18 per share or over 133% from the previous day's close of $25.63 per share.

55.     As a result of the price increase, Philip Markin generated total ill-gotten gains of $16,362.

56.     As a result of the price increase, Becker generated total ill-gotten gains of over $266,000.

## FIRST CLAIM FOR RELIEF

### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder

57.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 56.

58.     Defendant, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

59.     By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

### Violations of Exchange Act Section 14(e) and Rule 14e-3 Thereunder

60.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 56.

61.     By January 25, 2021, Merck (the "offering person") took substantial steps to commence or did commence a tender offer for Pandion shares of stock but the proposed tender offer was not publicly announced during this time.

62.    By at least February 16, 2021, Defendant possessed material nonpublic information received indirectly from the Associate, an employee of Merck's counsel with respect to the tender offer, relating to the tender offer for Pandion; knew or had reason to know that this information was nonpublic; knew or had reason to know that this information was acquired directly or indirectly from (a) the offering person, (b) the issuer of the securities sought or to be sought by such tender offer, or (c) any officer, director, partner or employee or any other person acting on behalf of such offering person or such issuer; and purchased or sold, or caused to be purchased or sold, Pandion's securities; and/or communicated material nonpublic information relating to such tender offer to one or more other persons under circumstances in which it was reasonably foreseeable that such communication was likely to result in a violation of Exchange Act Rule 14e-3.

63.    By reason of the foregoing, Defendant has violated and, unless enjoined, will again violate Exchange Act Section 14(e) [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

## I.

Permanently enjoining Defendant and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and Exchange Act Section 14(e) [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3];

## II.

Ordering Defendant to pay civil monetary penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1]; and

## III.

Granting any other and further relief this Court may deem just and proper.

Dated:  New York, New York
         September 9, 2024

*Tracy Sivitz*

Tracy Sivitz
Joseph G. Sansone
Chevon Walker
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY  10004-2616
(212) 336-0029 (Sivitz)
sivitzt@sec.gov